**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHRISTOPHER LEACH, | CASE NO. 1:15-cv-01230-YK-GBC |
| | (JUDGE KANE) |
| Plaintiff, | |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, | TO VACATE THE DECISION OF |
| COMMISSIONER OF | THE COMMISSIONER AND |
| SOCIAL SECURITY, | REMAND FOR FURTHER |
| | PROCEEDINGS |
| Defendant. | Docs. 1, 9, 10, 13, 16, 17 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Christopher Leach ("Plaintiff") for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.* (the "Regulations").

Plaintiff submitted a treating source opinion supported by objective medical findings. Doc. 10. The only evidence inconsistent with this opinion, aside from the ALJ's lay reinterpretation of medical evidence, was a single non-treating, non-examining medical opinion from a source who did not review a complete record. Doc. 10. An examining opinion corroborates the treating source opinion. Doc. 10.

Defendant identifies no precedential Third Circuit decision affirming an ALJ who credited a non-treating, non-examining source over a treating source medical opinion. In *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000) and *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008), the Third Circuit held that the ALJ erred by failing to adopt a treating source medical opinion when only a non-treating, non-examining opinion contradicted the treating source medical opinion. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317. *Morales* emphasized that the non-treating, non-examining source reviewed an incomplete case record. *See Morales*, 225 F.3d at 314 (non-treating, non-examining source "review[ed] [claimant's] medical record which…did not include [two physicians'] reports"). In Brownawell, like here, an examining opinion corroborated the treating source opinion. *See Brownawell*, 554 F.3d at 352. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id.*

*Brown*, *Morales*, and *Brownawell* correspond with SSR 96-6p, which provides that an ALJ may only assign less weight to a treating source opinion based on a non-treating, non-examining medical opinion in "appropriate circumstances." SSR 96-6p; *see also* 20 C.F.R. §404.1527(c)(1) (Generally, ALJ should give more weight to an opinion from an examining source than a non-examining source). SSR 96-6p does not define "appropriate circumstances," but

provides an example: when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This example does not constitute the only possible appropriate circumstance to assigning greater weight than a treating medical opinion, but the phrase "appropriate circumstances" should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration").

SSR 96-6p also corresponds with *Frankenfield v. Bowen,* 861 F.2d 405 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26 (3d Cir. 1986); *Ferguson v. Schweiker,* 765 F.2d 31 (3d Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110 (3d Cir. 1983); *Van Horn v. Schweiker,* 717 F.2d 871 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486 (3d Cir. 1980); *Rossi v. Califano,* 602 F.2d 55 (3d Cir. 1979); *Fowler v. Califano,* 596 F.2d 600 (3d Cir. 1979); and *Gober v. Matthews,* 574 F.2d 772 (3d Cir. 1978)). These cases hold that lay reinterpretation of medical evidence does not provide substantial inconsistent evidence to assign less than controlling weight to a treating source medical opinion. *Id.* If the non-treating, non-examining source fails

to review the complete record, the ALJ may be required to undertake lay reinterpretation of medical evidence to reject the treating opinion.

After *Frankenfield, Doak, Ferguson, Kent, Van Horn, Kelly, Rossi,* and *Fowler* were decided, the Social Security Administration promulgated regulations addressing medical opinions for the first time. *See* Standards, 56 FR 36932-01 at 36936. The Social Security Administration retained, rather than abrogated, this common-law when it promulgated 20 C.F.R. §404.1527(c). *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Regulatory enactments are presumed to retain, rather than abrogate, pre-existing common law unless the enactments are incompatible with existing common-law or there is evidence of a clear intent to abrogate. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (citing *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993); *Sebelius v. Cloer*, ——U.S. —— –, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). The party asserting that the enactment abrogates common law bears the burden of overcoming this presumption. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). The controlling weight provision is compatible with *Frankenfield, Doak, Ferguson, Kent, Van*

*Horn, Kelly, Rossi,* and *Fowler*, and the Supreme Court, Congress, and the Social Security Administration have acknowledged that the intent of 20 C.F.R. §404.1527 was to codify, rather than supersede, the common-law treating source rule. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Here, Defendant does not allege that the presumption is overcome. (Def. Brief). Consequently, Defendant fails to overcome the presumption that 20 C.F.R. §404.1527 did not supersede existing common law. [1]

The ALJ is bound by SSR 96-6p, and the Court should afford SSR 96-6p deference as an interpretation of 20 C.F.R. §404.1527. *See* 20 C.F.R. § 402.35(b)(1) (Social Security Rulings are "binding on all components of the Social Security Administration"); *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). The Court and the ALJ are bound by precedential Third Circuit decisions. [2] *See Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New*

---

[1] When parties "raise [an] argument…or the first time in her objections to the Magistrate Judge's Report and Recommendations," Courts may "deem this argument waived." *Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) (citing *Laborers' Int'l Union of N.A. v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir.1994)).

[2] The Social Security Administration abolished its policy of nonacquiscene in 1990. *See Hyatt v. Barnhart*, 315 F.3d 239, 242 (4th Cir. 2002) ("The SSA ended its policy of nonacquiescence"); *Mannella v. Astrue*, No. CV06-469-TUC-CKJ BPV, 2008 WL 2428868, at *14 (D. Ariz. Feb. 20, 2008), *report and recommendation adopted in part, rejected in part,* No. CIV06-469-TUC-CKJ BP, 2008 WL 2428869 (D. Ariz. June 12, 2008) ("The Social Security Administration followed a 'nonacquiescence' policy for a number of years…The Social Security

*Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir.2001) ("To the extent it applied dicta ... the District Court erred"); 20 C.F.R. § 404.985(a)(The ALJ "will apply a holding in a United States Court of Appeals decision that we determine conflicts with our interpretation of a provision of the Social Security Act or regulations unless the Government seeks further judicial review of that decision or we relitigate the issue presented in the decision").

The Court finds that the ALJ failed to provide a sufficient reason to reject the treating source opinion. "Despite the deference due to administrative decisions in disability benefit cases, '[Courts] retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981)). The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings and proper evaluation of the medical opinions.

## II.    Procedural Background

On October 15, 2012, Plaintiff applied for DIB. (Tr. 191-92). On February 8, 2013, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 70-96), and Plaintiff requested a hearing. (Tr. 111). On January 14,

---

Administration ("SSA") has since issued regulations which require that the SSA apply a Circuit Court of Appeals decision"); 20 C.F.R. §404.985(a).

2014, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 34-69). On January 24, 2014, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 16-33). Plaintiff requested review with the Appeals Council (Tr. 14-15), which the Appeals Council denied on April 21, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On June 22, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On October 2, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On December 21, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 13). On February 26, 2016, Defendant filed a brief in response ("Def. Brief"). (Doc. 16). On March 15, 2016, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 17). On January 12, 2016, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires

that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four.  If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d

1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act

lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine

whether substantial evidence supports the denial. *Johnson v. Commissioner of*

*Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential

standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

Substantial evidence "does not mean a large or considerable amount of evidence,

but rather 'such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial

evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum*

*v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)

(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Relevant Facts in the Record

### A.    Background

Plaintiff was born in 1967 and was classified by the Regulations as a

younger individual through January 28, 2014, the date of the ALJ decision. (Tr. 19-

29); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past

relevant work as a route driver and groundskeeper. (Tr. 27). Plaintiff established

medically determinable, severe impairments of major depressive disorder,

intermittent explosive disorder, alcohol dependence, migraines and headaches. (Tr. 21).On January 28, 2014, the ALJ found that Plaintiff did not need any limitation in the RFC relating to migraines or any marked mental health limitations. (Tr. 19-29).

### B.    Treating Source Medical Opinion

Plaintiff began reporting migraine headaches in August of 2012 and treating with neurologist Dr. Nancy Kelley, M.D., in September of 2012. On October 9, 2013 , Dr. Kelly opined that Plaintiff's migraine headaches were causing a "severe disability" and a "severe impact." (Tr. 451).

### C.    Examining Source Medical Opinions

In December of 2011 and January of 2013, consultative source Dr. David O'Connell, Ph.D., examined Plaintiff and authored medical opinions.  Dr. O'Connell opined that Plaintiff suffered marked mental health limitations in both opinions.  (Tr. 345-49, 441-44). Dr. O'Connell observed depressed mood, poor fund of knowledge, difficulty with proverbs, low average intelligence, and that Plaintiff was easily distracted. (Tr. 345-49, 441-44). At both visits, Dr. O'Connell assessed a GAF of 38. (Tr. 345-49, 441-44). In December of 2011, Dr. O'Connell diagnosed depression, and in January of 2013, Dr. O'Connell diagnosed bipolar disorder. (Tr. 345-49, 441-44).

### D.      Subjective Reports

Plaintiff reported and testified that he could perform some activities of daily living on a sporadic and transitory basis that allowed for breaks as needed. (Tr. 50-54, 228-35). Plaintiff reported suffering daily headaches from August of 2012 through October of 2013. (Tr. 451, 459, 466). Plaintiff described throbbing, pounding, pressure, grinding and hat-band, and associated with lightheadedness, phonophobia, photophobia, stiff neck and facial flushing (R. 365). Plaintiff treated with oral medications and injections including Botox, but testified in January of 2014 that he had not obtained relief (R. 50-54). Plaintiff reported a temporary improvement in September of 2013, but on October 9, 2013, Plaintiff reported "head pain on 90 of the last 90 days with an average pain of 9-10/10. This represents a continuation of his headache frequency/intensity compared to the previous 90 days (90/90; 5-10/10)." (Tr. 451).

### E.      Non-Treating, Non-Examining Medical Source Opinions

On December 17, 2012, , thirteen months prior to January 28, 2014, the date of the ALJ decision, non-treating, non-examining source Dr. Brown, D.O., reviewed Plaintiff's file and authored an opinion. (Tr. 84-92). Dr. Brown opined that Plaintiff would not need additional breaks during the workday for migraines. (Tr. 84-92). Dr. Brown characterized the evidence he reviewed as showing normal findings, with no abnormalities, and that Plaintiff had not had any follow-up for his

migraine headaches. Dr. Brown did not review any of Dr. Kelley's subsequent migraine treatment. (Tr. 84-92). Dr. Brown provided the following narrative explanation: "Headaches were noted daily but no follow up after his initial consult with the [illegible] due to medication overuse headaches…Headaches were not mentioned as part of his "disability." (Tr. 91-92).

### F.    Medical Records

During the relevant period, providers, including Dr. Kelly, observed objective findings, such as abnormal balance, cervical tenderness, shoulder tenderpoints, vestibular hypofunction, saccades with rapid head thrust, and in August of 2012, brain MRI indicated "a few punctuate areas of nonspecific signal abnormality in the cerebellum and parietal regions," consistent with "[s]mall subtle areas of chronic microischemic change, demyelination, gliosis or sequela of migraine headache." (Tr. 383-84, 407).

Subsequent to Dr. Brown's opinion, records were submitted showing consistent follow-up with Dr. Kelly. (Tr. 450-81). Plaintiff's diagnosis of medication overuse headache was removed, and his diagnoses in October of 2013 were cervicalgia, chronic daily headache, and chronic, intractable migraine without aura. (Tr. 452). In October of 2013, Dr. Kelly began treating Plaintiff with Botox injections, explaining that his "headaches last for more than 5 hours a day" and "he has had a sufficient trial (appropriate doses for at least 3 months) of the following

preventive medications with little or no benefit: Zoloft, Depakote, Topamax, verapamil, baclofen." (Tr. 461).

## V.    Plaintiff Allegations of Error

### A.    Treating Source Medical Opinions

Plaintiff asserts that the ALJ erred in crediting Dr. Brown's non-treating, non-examining medical opinion over Dr. Kelly's treating source medical opinion. (Pl. Brief); (Pl. Reply). The ALJ wrote that:

> Recent progress notes in September and October 2013 revealed the claimant's headaches and migraines were becoming less intense and the claimant was continued on Botox injection treatment (Exhibit 16F). Testing performed by the neurologist revealed scores in the serious range for migraine headaches however this testing is based predominantly upon the subjective reports of the claimant and are not particularly persuasive. More persuasive are the clinical and objective findings discussed herein.

 (Tr. 26).

Pursuant to SSR 96-6p, an ALJ may only assign less weight to a treating source opinion based on a non-treating, non-examining medical opinion in "appropriate circumstances." SSR 96-6p. SSR 96-6p does not define "appropriate circumstances," but provides an example: when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This example does not constitute the only possible appropriate circumstance to assigning greater weight than a treating medical opinion, but the

phrase "appropriate circumstances" should be construed as a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration").

SSR 96-6p is consistent with the controlling weight provision. *See* 20 C.F.R. §404.1527(c)(2). The Regulations generally require the ALJ to "give more weight to opinions from [a claimant's] treating sources" ("treating source rule"). 20 C.F.R. § 404.1527(c)(2); *see also* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at *36936 ("as long as the treating source is someone entitled to special deference, and all other factors are equal, we will always give more weight to treating source medical opinions than to opinions from other sources"); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) ("A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."). An ALJ must assign controlling weight to a treating source opinion if it is well-supported and not inconsistent with other substantial evidence. *See* 20 C.F.R. §404.1527(c)(2).

Defendant asserts that "the responsibility for deciding a claimant's RFC rests with the ALJ." (Def. Brief at 7) (citing 20 C.F.R. §404.1546). "However, 20 C.F.R. § 404.1546(c) merely identifies which employee within the Social Security Administration assesses the RFC at each procedural stage, and provides that 'the administrative law judge,' as opposed to delegates of the Office of Disability Determinations, 'is responsible for assessing [claimants'] residual functional capacity' at the ALJ stage." *Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (quoting 20 C.F.R. §404.1546). In contrast, pursuant to SSR 96-5p:

> Although the overall RFC assessment is an administrative finding on an issue reserved to the Commissioner, the adjudicator must nevertheless adopt in that assessment any treating source medical opinion (i.e., opinion on the nature and severity of the individual's impairment(s)) to which the adjudicator has given controlling weight under the rules in 20 CFR 404.1527(d)(2) and 416.927(d)(2).

*Id.*[3]

Lay reinterpretation of medical evidence is not substantial inconsistent evidence. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016; *Tilton v. Colvin*, No. 1:14-CV-02219-YK-GBC, 2016 WL 1580003, at *1 (M.D. Pa. Mar. 31, 2016), *report and recommendation adopted,*

---

[3] Defendant asserts that the ALJ "will not give any special significance to the source of another opinion on this issue." (Def. Brief at 7) (citing 20 C.F.R. §§ 404.1527(e)(2), (e)(3)). These provisions do not apply here because they address non-treating sources.

No. 1:14-CV-2219, 2016 WL 1569895 (M.D. Pa. Apr. 19, 2016) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir. 1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir. 1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978)). These cases hold that, even under the deferential substantial evidence standard of review, lay reinterpretation of medical evidence is not inconsistent substantial evidence. *Id.*

After these cases were decided, the Social Security Administration promulgated regulations addressing medical opinions for the first time. *See* Standards, 56 FR 36932-01 at 36936. Regulatory enactments retain, rather than abrogate, pre-existing common law unless the enactments are incompatible with existing common-law or there is evidence of a clear intent to abrogate. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (citing *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993); *Sebelius v. Cloer*, ——U.S. ——, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992);  *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543,

114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). The party asserting that the enactment abrogates common law bears the burden of overcoming this presumption. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989).

The controlling weight provision, 20 C.F.R. §404.1527(c)(2), codifies the treating source rule and is compatible with *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* for any uncontradicted, well-supported treating source opinion. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Specifically, 20 C.F.R. § 404.1527(c)(2) provides that, if a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the ALJ must "give it controlling weight." *Id.* The Regulations do not define other "inconsistent....substantial evidence." *Id.* *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* hold that lay reinterpretation of medical evidence does not constitute inconsistent . substantial evidence. *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober* provide guidance for the regulatory language

"inconsistent…substantial evidence." 20 C.F.R. §404.1527(c)(2). *Frankenfield*,

*Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* and 20 C.F.R.

§404.1527(c)(2) are compatible.[4]

The intent to codify, rather than change, the existing law with 20 C.F.R.

§404.1527(c) has been noted by Congress, the Supreme Court, and the Social

Security Administration itself. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL

147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing Standards for Consultative

Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36934 ("[T]he

majority of the circuit courts generally ... agree that treating source evidence tends

to have a special intrinsic value by virtue of the treating source's relationship with

the claimant ... [and] if the Secretary decides to reject such an opinion, he should

provide the claimant with good reasons for doing so. We have been guided by

these principles in our development of the final rule"); *Black & Decker Disability

Plan v. Nord*, 538 U.S. 822, 823, 123 S.Ct. 1965, 1966, 155 L.Ed.2d 1034 (2003)

("The treating physician rule ... was originally developed by Courts of Appeals ...

In 1991, the Commissioner of Social Security adopted regulations approving and

formalizing use of the rule in the Social Security disability program")).

---

[4] The guidance from the SSA explicitly contemplates that non-medical evidence
can provide substantial inconsistent evidence, but does not explicitly address
whether lay reinterpretation of medical evidence constitutes substantial
inconsistent evidence. *See* Standards for Consultative Examinations and Existing
Medical Evidence, 56 FR 36932–01 at 36934.

The Third Circuit has not addressed an uncontradicted treating source opinion since the SSA promulgated these regulations, but other Circuits have. *See Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009); *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Harbor v. Apfel*, 242 F.3d 375 (8th Cir. 2000); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995). These cases continued to hold that an ALJ may not reject an uncontradicted treating source medical opinion with only lay reinterpretation of medical evidence. *Id.* When a Court of Appeals issues a decision that the SSA determines is contradictory to the intended interpretation of a regulation, the SSA must issue an Acquiescence Ruling. 20 C.F.R. § 404.985(b)(1) ("We will release an Acquiescence Ruling for publication in the Federal Register for any precedential circuit court decision that we determine contains a holding that conflicts with our interpretation of a provision of the Social Security Act or regulations no later than 120 days from the receipt of the court's decision."); *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S. Ct. 864, 871, 74 L. Ed. 2d 675 (1983) ("language of an unmistakably mandatory character" includes "'shall,' 'will,' or 'must'"). More than 120 days has passed since these decisions, and the SSA has not promulgated an Acquiescence Ruling regarding any of these decisions. *Cf.*

*Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (Absent a Social Security Ruling, Acquiescence Ruling, or Regulation indicating the SSA's interpretation, SSA's position in this case is "nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack") (quoting *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-21667 (2012)).

Moreover, although the Third Circuit has not addressed in a precedential opinion an uncontradicted treating source medical opinion, the Third Circuit has reaffirmed the prohibition of lay reinterpretation of medical evidence even when there is a contradictory medical opinion. Consistent with 96-6p, the Third Circuit has not upheld, in a precedential decision, any ALJ who assigns less than controlling weight to a treating source opinion based only on a single non-treating, non-examining medical opinion from a source who did not review the entire case record. *See Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352, (3d Cir. 2008); *Morales*, 225 F.3d at 317. Since 20 C.F.R. §404.1527 was promulgated the only precedential case affirming an ALJ who rejected a treating source medical opinion with a non-treating source opinion was *Brown*, where the ALJ relied on two consistent medical opinions to reject the treating source medical

opinion, one from an expert who reviewed the record through the hearing date. *Brown*, 649 F.3d at 196.

In *Brownawell* and *Morales*, the Third Circuit held that a single non-treating, non-examining medical opinion was not sufficient to reject a treating source medical opinion. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317. *Morales* emphasized that the non-treating, non-examining source reviewed an incomplete case record. *See Morales*, 225 F.3d at 314 (non-treating, non-examining source "review[ed] [claimant's] medical record which…did not include [two physicians'] reports"). In *Brownawell*, an examining source opinion corroborated the treating source medical opinion. In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), there were three non-treating medical opinions and one treating medical opinion, but the Court held that the non-treating medical opinions did not provide good enough reason to reject the treating source medical opinion because they were "perfunctory" and omitted significant objective findings. *Id*. at 505.

Here, Defendant cites *Mays v. Barnhart*, 78 F. App'x 808 (3d Cir. 2003) (Def. Brief at 18). However, the ALJ and the District Court are bound by precedential Third Circuit decisions. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) ("When binding precedent squarely addresses an issue, the District Court may not deviate from that precedent based on

dicta") (citing *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir.2001) ("To the extent it applied dicta ... the District Court erred")); 20 C.F.R. § 404.985(a)("We will apply a holding in a United States Court of Appeals decision that we determine conflicts with our interpretation of a provision of the Social Security Act or regulations unless the Government seeks further judicial review of that decision or we relitigate the issue presented in the decision").[5] As the Third Circuit explained in *Jamison v. Klem*, 544 F.3d 266, 278 n. 11 (3d Cir. 2008):

> We also reject the District Court's reliance on *Voils v. Hall,* 151 Fed.Appx. 793, 795 (11th Cir.2005). We have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this court. *See* Third Circuit Internal Operating Procedure 5.7 (indicating that "the court by tradition does not cite to its not precedential opinions as authority"). *See also, Fallon Elec. Co. v. Cincinnati Insur. Co.,* 121 F.3d 125, 128 n. 1 (3d Cir.1997) ( "[We] do not regard such opinions as binding precedent."). We do not accept these opinions as binding precedent because, unlike precedential opinions, they do not circulate to the entire court before they are filed. Accordingly, not every judge on the court has had an opportunity to express his/her views about the opinion before it is filed.

---

[5] The Social Security Administration abolished its policy of nonacquiescene in 1990. *See Hyatt v. Barnhart*, 315 F.3d 239, 242 (4th Cir. 2002) ("The SSA ended its policy of nonacquiescence"); *Mannella v. Astrue*, No. CV06-469-TUC-CKJ BPV, 2008 WL 2428868, at *14 (D. Ariz. Feb. 20, 2008), *report and recommendation adopted in part, rejected in part,* No. CIV06-469-TUC-CKJ BP, 2008 WL 2428869 (D. Ariz. June 12, 2008) ("The Social Security Administration followed a 'nonacquiescence' policy for a number of years…The Social Security Administration ("SSA") has since issued regulations which require that the SSA apply a Circuit Court of Appeals decision"); 20 C.F.R. §404.985(a).

> Here, the District Court relied on a decision that is not only not
> precedential, it is not even a decision of a panel of this court.
> Accordingly, we will not explain why we think that decision is ill-
> advised and poorly reasoned.

*Id.* at 278 n. 11. The District Court may not deviate from binding precedent in

*Brownawell*, *Morales*, *Diaz*, and *Brown* based on non-precedential decisions.

*Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Diaz v. Comm'r of Soc.*

*Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brown*, 649 F.3d at 196.

Defendant frequently cites additional cases in support of an ALJ who rejects

a treating source medical opinion with only a single non-treating, non-examining

source who did not review the entire record: *Chandler v. Comm'r of Soc. Sec.*, 667

F.3d 356 (3d Cir. 2011); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d

Cir. 2008); *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999); *Brown v. Astrue*, 649

F.3d 193 (3d Cir. 2011); and *Jones v. Sullivan*, 954 F.2d 125 (3d Cir. 1991).

However, none of these cases address assigning less than controlling weight to a

treating source opinion pursuant to 20 C.F.R. §404.1527 with only a single non-

examining opinion from a source who did not review the entire record. *Jones* was:

(1) decided before 20 C.F.R. §404.1527 and SSR 96-6p were promulgated; and (2)

involved an ALJ who relied on two state agency medical opinions that

corroborated each other to reject the treating source medical opinion. *See Jones*,

954 F.2d at 129.

Neither *Chandler*, *Plummer*, nor *Johnson* involve rejecting treating source opinions with non-treating evidence. In *Plummer*, the ALJ relied on three other treating source opinions that the claimant was not disabled to reject a single treating source opinion that the claimant was disabled. *Id.*  In *Johnson*, the Third Circuit held that there was no treating source opinion pertinent to the relevant period.  *Johnson*, 529 F.3d at 201-03. Instead, the treating source opined that the claimant's disability did not begin until after her date last insured. *Id.*  In *Chandler*, there were no treating source medical opinions before the ALJ. *Id.* at 360-63.[6] There was only one medical opinion before the ALJ: an uncontradicted medical opinion from a state agency physician that the claimant was not disabled. *Chandler*, 667 F.3d at 360-63.

Here, Defendant cites *Chandler* for the premise that an ALJ may rely on a state agency opinion. (Def. Brief at 20). The ALJ in *Chandler* relied on a state agency opinion in the absence of any treating source medical opinion.

---

[6] There were statements from a nurse practitioner, but a nurse practitioner is not an acceptable medical source. *Id.* "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-3p. Consequently, they may never be entitled to controlling weight and are not entitled to the treating source rule. *See* 20 C.F.R. §404.1527(c)(2); SSR 06-3p. The claimant submitted two medical opinions in support of her claim, but not until after the ALJ decision. *Chandler*, 667 F.3d at 360. The Third Circuit excluded these from consideration because Plaintiff had no good cause for not submitting them prior to the ALJ decision. *Id.* (citing *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001).

Consequently, statements in *Chandler* are dicta as applied to cases where the ALJ relies on a state agency opinion to assign less than controlling weight to a treating source medical opinion.  The District Court cannot deviate from binding precedent in *Brown, Morales, Brownawell, Diaz,* or SSR 96-6p based on dicta in these cases. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 355 (3d Cir.2002) (Statements that are "not necessary to the actual holding of the case" are "dicta" and "not binding"); *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338, 344 n. 9 (3d Cir.2000) ("Insofar as this determination was not necessary to either court's ultimate holding, however, it properly is classified as dictum. It therefore does not possess a binding effect on us pursuant to the 'law of the case' doctrine."); *Chowdhury v. Reading Hosp. & Med. Ctr.,* 677 F.2d 317, 324 (3d Cir.1982) ("[D]ictum, unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered when assessing its utility in the context of an actual controversy. Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law.") (quotations omitted).

Congress has since amended the Act to require medical expert review of the medical evidence for any claimant who establishes any medically determinable impairment. *See* BIPARTISAN BUDGET ACT OF 2015, PL 114–74, November

2, 2015, 129 Stat 584, § 832(a). This change is particularly notable given the context of the other amendments to the Act, which were generally designed to save costs for the Administration.[7] This amendment recognizes that medical evidence requires review by an individual with medical training, rather than lay interpretation. *See also North Haven Board of Education v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) ("Although postenactment developments cannot be accorded 'the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions'") (quoting *Cannon v. Univ. of Chi.,* 441 U.S. 677, 686 n. 7, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); (*INS v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

Dr. Kelly was an acceptable medical source. (Tr. 451); 20 C.F.R. §404.1527(a). Dr. Kelly was also a treating source because Dr. Kelly treated Plaintiff "a number of times and long enough to have obtained a longitudinal picture of [Plaintiff's] impairment[s]." 20 C.F.R. § 404.1527(c)(2). Dr. Kelly's statement is a medical opinion "on the issue(s) of the nature and severity of [Plaintiff's] impairment(s)," and was not a statement on an issue reserved to the

---

[7] Subtitle A, entitled "Ensuring Correct Payments and Reducing Fraud," expands fraud investigation units nationwide, prohibits the Commissioner from considering evidence from medical providers who have been convicted of certain crimes, creates "new and stronger penalties" for Social Security fraud, and requires electronic payroll data to improve efficient administration. *Id.* §§ 811–831.

Commissioner. 20 C.F.R. §404.1527(c)(2). Thus, the ALJ must assign Dr. Kelly's opinion controlling weight if it is well-supported and not inconsistent with other substantial evidence. *Id.*

The ALJ erred in finding that Dr. Kelly's opinion was not well-supported. (Tr. 451). The Administration "changed the term 'fully supported' to 'well-supported' because" the Administration:

> [A]greed with commenters who pointed out that 'fully supported' was unclear and that, more important, it was an impractically high standard which, even if it were attainable, would essentially make any opinion superfluous. We believe that the new term, 'well-supported,' is more practicable and more reasonable; it should make clear that we will adopt opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques unless they are inconsistent with substantial evidence in the record.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36936. During the relevant period, providers, including Dr. Kelly, observed objective findings, such as abnormal balance, cervical tenderness, shoulder tenderpoints, vestibular hypofunction, saccades with rapid head thrust, and in August of 2012, brain MRI indicated "a few punctuate areas of nonspecific signal abnormality in the cerebellum and parietal regions," consistent with "[s]mall subtle areas of chronic microischemic change, demyelination, gliosis or sequela of migraine headache." (Tr. 383-84, 407).

The ALJ's error is compounded by her failure to mention the August 2012 MRI. (Tr. 19-29). The ALJ's decision must be accompanied by "a clear and

satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ "must explicitly weigh all relevant, probative and available evidence and "must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal citations and quotations omitted). Defendant cites *Hook v. Bowen*, 677 F. Supp. 305, 306 (M.D. Pa. 1988) for the premise that "the Court may look to any evidence in the record, regardless of whether the Commissioner cites to it in his decision," but the Court will not deviate from *Adorno* and *Cotter* based on this District Court case. (Def. Brief at 1).

The Administration further explained:

Some commenters were concerned that the proposed language of §§ 404.1527(b) and (c), and 416.927(b) and (c) permitted us to discount a treating source's apparently unsupported opinion without recontacting the source, and that the rules placed highly restrictive conditions on obtaining additional information from treating sources.

Response: To the contrary, recontact with treating sources to complete the case record and to resolve any inconsistencies in the evidence is one of the principal provisions of this set of rules. See §§ 404.1512(d) and 416.912(d) of these final regulations. Far from being restrictive, the intent of these rules is to require such contacts.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932–01, 36951–36952. There is no evidence in the record that the ALJ attempted to recontact Dr. Kelly. To the extent Dr. Kelly's opinion was on an issue reserved to the Commissioner, the ALJ was required to make "every reasonable

effort" to recontact Dr. Kelly. SSR 96-5p ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion.").

The ALJ erred in finding that Dr. Kelly's opinion was inconsistent with other substantial evidence. The use of the word "example" in SSR 96-6p suggests that "appropriate circumstances" is not exclusively limited to a situation where the source reviews a complete case record with more detailed and comprehensive information than what was available to the treating source. However, the phrase "appropriate circumstances" should be construed as a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration"). The ALJ wrote that:

> Recent progress notes in September and October 2013 revealed the claimant's headaches and migraines were becoming less intense and the claimant was continued on Botox injection treatment (Exhibit 16F). Testing performed by the neurologist revealed scores in the serious range for migraine headaches however this testing is based predominantly upon the subjective reports of the claimant and are not particularly persuasive. More persuasive are the clinical and objective findings discussed herein.

Page **29** of **37**

(Tr. 26).

First, the ALJ mischaracterized the evidence. *See Cotter v. Harris,* 642 F.2d 700, 707 (3d Cir.1981) ("Since the ALJ ... misconstrued the evidence considered, his conclusion ... must be reconsidered"). On October 9, 2013, Dr. Kelly opined that Plaintiff's migraine headaches were causing a "severe disability" and a "severe impact." (Tr. 451). The non-medical evidence did not contradict Dr. Kelly's opinion. Plaintiff reported and testified that he could perform some activities of daily living on a sporadic and transitory basis that allowed for breaks as needed. (Tr. 50-54, 228-35). Plaintiff reported suffering daily headaches from August of 2012 through October of 2013. (Tr. 451, 459, 466). Plaintiff described throbbing, pounding, pressure, grinding and hat-band, and associated with lightheadedness, phonophobia, photophobia, stiff neck and facial flushing (R. 365). Plaintiff treated with oral medications and injections including Botox, but testified in January of 2014 that he had not obtained relief (R. 50-54). Plaintiff reported a temporary improvement in September of 2013, but on October 9, 2013, Plaintiff reported "head pain on 90 of the last 90 days with an average pain of 9-10/10. This represents a continuation of his headache frequency/intensity compared to the previous 90 days (90/90; 5-10/10)." (Tr. 451).

Defendant notes that Plaintiff reported being "independent," but this does not indicate that Plaintiff would not need additional breaks to handle migraine

headaches. (Tr. 390).   These activities of daily living do not contradict Dr. Dr. Kelly's opinion that Plaintiff was suffering a "severe" impact from his headaches. (Tr. 451).

This leaves only Dr. Brown's opinion, from non-treating, non-examining sources who did not review the entire record. (Tr. 84-92). Dr. Brown's inability to review the entire record required the ALJ to engage in impermissible lay interpretation of medical evidence. *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. Dr. Brown's opinion was thirteen months prior to January 28, 2014, the date of the ALJ decision. (Tr. 84-92). Dr. Brown relied on a purported lack of follow-up for headache treatment. (Tr. 84-92). Subsequent to Dr. Brown's opinion, records were submitted showing consistent follow-up with Dr. Kelly. (Tr. 450-81). Plaintiff's diagnosis of medication overuse headache was removed, and his diagnoses in October of 2013 were cervicalgia, chronic daily headache, and chronic, intractable migraine without aura. (Tr. 452). In October of 2013, Dr. Kelly began treating Plaintiff with Botox injections, explaining that his "headaches last for more than 5 hours a day" and "he has had a sufficient trial (appropriate doses for at least 3 months) of the following preventive medications

with little or no benefit: Zoloft, Depakote, Topamax, verapamil, baclofen." (Tr. 461).

In sum, all of the legal authority cited by Defendant is dicta as applied to an ALJ who assigns less than controlling weight to a treating source medical opinion with only a single non-treating, non-examining medical opinion from a source who did not review the complete record. *Supra*. In SSR 96-6p, the Social Security Administration interpreted 20 C.F.R. §404.1527 to allow an ALJ to credit a non-examining, non-treating source over a treating source in "appropriate circumstances," such as when the source reviewed "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.*  In *Morales*, the Third Circuit remanded where the ALJ assigned less than controlling weight to a treating source medical opinion where the ALJ relied on a single non-treating, non-examining medical opinion from a source who did not review the complete record. *Morales*, 225 F.3d at 317. Here, the ALJ assigned less than controlling weight to a treating source medical opinion based only on a single non-treating, non-examining medical opinion from a source who did not review the complete record. (Tr. 19-29); *see also Kreiser v. Colvin*, No. 3:15-CV-1603, 2016 WL 704957, at *13 (M.D. Pa. Feb. 23, 2016) (Affirming where expert "reviewed records…through November 2012" and "the record does not appear to contain….treatment records which post date [the

expert's] opinion"); *Garcia v. Colvin*, No. 3:15-CV-0171, 2016 WL 1695104, at *15 (M.D. Pa. Apr. 26, 2016) (Nealon, J.) (Remanding because the ALJ erred in relying on non-examining, non-treating physician where "the entire medical record was not available to the non-examining, non-treating physician"); *Gallo v. Colvin*, No. 4:15-CV-0167, 2016 WL 2936547, at *2 (M.D. Pa. May 13, 2016) (Brann, J.) (Non-examining expert was able to review all evidence through the date of the hearing).

The ALJ has not provide "good reasons" or identified "appropriate circumstances" to assign less than controlling weight to Dr. Kelly's opinion with only Dr. Brown's opinion as inconsistent evidence. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; SSR 96-6p, 20 C.F.R. §404.1527(c)(2). Dr. O'Connell's examining opinion corroborates Dr. Kelly's opinion. Dr. Brown did not review a complete case record, so the ALJ was required to undertake lay reinterpretation of significant medical evidence to supplant the treating source opinion. The non-medical evidence was consistent with Dr. Kelly's opinion.

Defendant's brief either repeats the ALJ's reasoning or provides improper post-hoc rationalizations. (Def. Brief); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("review must also be based on the administrative record [that was] already in existence before

the agency, not…post-hoc rationalizations made after the disputed action") (internal quotation omitted). Defendant notes that Plaintiff did not allege migraines when he initially applied for benefits under the Act, but this is not determinative of disability. (Def. Brief at 16). Defendant notes that the ALJ relied on the non-treating, non-examining opinions but does not explain how appropriate circumstances existed to credit the non-treating, non-examining opinions. *See* SSR 96-6p. Defendant cites 20 C.F.R. §404.1527(c)(3)-(c)(4), but the ALJ may not utilize the factors in 20 C.F.R. §404.1527(c) until after the ALJ has properly found that no treating source opinions were entitled to controlling weight. *See* 20 C.F.R. §404.1527(c)(2). Defendant cites none of the relevant, precedential decisions discussed above. (Def. Brief).

Defendant notes that the Court should not reweigh evidence. (Def. Brief at 8) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971)). However, "[d]espite the deference due to administrative decisions in disability benefit cases, "[Courts] retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981)). The Court recommends remanding the case for further evaluation of Dr. Kelly's opinion pursuant to SSR 96-6p, 20 C.F.R. §404.1527(c) and *Diaz, Brownawell*, *Morales*, *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*,

*Kelly*, *Rossi*, *Fowler* and *Gober*. *See* SSR 96-6p; 20 C.F.R. §404.1527(c)(2);

*Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777;

*Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-

37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494;

*Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

## B.    Other Allegations of Error

Because the Court recommends remand on these grounds, it declines to

address Plaintiff's other allegations. A remand may produce different results on

these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc.

Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## C.    Remedy

Remand, rather than reversal and award of benefits, is the appropriate

remedy in this case. *See Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003)

("[T]he proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation") (internal quotations omitted)).

## VI.    Conclusion

The undersigned recommends that the Court vacate the decision of the

Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further

proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.    The decision of the Commissioner of Social Security denying Plaintiff's

benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.      The Clerk of Court close this case.

        The parties are further placed on notice that pursuant to Local Rule 72.3:

        Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: June 20, 2016                    _____s/Gerald B. Cohn_____
                                        GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE